UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
COUNTRYWIDE HOME LOANS, INC.,

                Plaintiff,                    **FINDINGS OF FACT AND**
    - v -                                     **CONCLUSIONS OF LAW**

GARY BROWN, et al.,                    CV 03-21 (VVP)

                Defendants.
-----------------------------------------------------------x
POHORELSKY, Magistrate Judge:

      Having considered the evidence at trial and the submissions of the parties, the court makes the following findings of fact and reaches the following conclusions of law:

## FINDINGS OF FACT

*The Parties*

      1.      The plaintiff Countrywide Home Loans Inc. is a banking corporation duly licensed as such, incorporated in a state other than New York, and with a principal place of business at 400 Countrywide Way, Simi Valley, California when this action was filed.

      2.      The defendant Gary Brown is a resident of the State of New York and the owner of record of certain real property at issue in this action.

      3.      The defendants Criminal Court of the City of New York, New York City Environmental Control Board, New York City Parking Violations Bureau and United States of America Internal Revenue Service are all agencies of federal, state and local

government who are joined as defendants by virtue of certain liens they hold with respect to the real property at issue as judgment creditors of the defendant Gary Brown.

### *The Mortgage*

4.      The defendant Gary Brown purchased a house located at 133-34 130th Street, Jamaica, New York on June 21, 1996.

5.      To purchase the house, Gary Brown borrowed funds in the amount of $105,700 from Alliance Mortgage Banking Corporation and executed a Promissory Note in favor of Alliance Mortgage in that amount on June 21, 1996.  (PX 5)[1]

6.      To secure the Note, Gary Brown also signed a Purchase Money Mortgage in favor of Alliance Mortgage in the amount of $105,700 on June 21, 1996.  (PX 1)

7.      The Mortgage pledged the residential real estate owned by Gary Brown located at 133-34 130th Street, Jamaica, New York as security for the Note.

8.      The Note and Mortgage require, among other things, that monthly payments in the amount of $831.55 be made by the defendant for the payment of principal and interest on the note.  (PX 5)  In the event that the defendant fails to make a payment when due, the mortgage holder may declare a default and require payment of the outstanding balance of the loan in full.  Before instituting foreclosure proceedings,

---

[1]"PX" refers to the plaintiff's exhibits introduced at trial; "DX" refers to the defendant's exhibits introduced at trial; "Tr.(1)" refers to the trial transcript for February 14, 2005; "Tr.(2)" refers to the trial transcript for February 15, 2005.

however, the mortgage holder must provide the defendant with a written notice of default and a period of time to cure the default. (PX 1)

9.      Alliance assigned the above Note and Mortgage (hereinafter collectively referred to at times as "the loan") to the plaintiff Countrywide Home Loans on June 21, 1996. (PX 2)

10.     Approximately two years later, on June 16, 1998, Countrywide assigned the Note and Mortgage to Fairbanks Capital Corp. (PX 3)

11.     On or about March 29, 2002, Fairbanks Capital agreed to assign the Note and Mortgage back to Countrywide, and Countrywide resumed the servicing of the Note and Mortgage at that time. (Tr.(1) at 65, 100) The assignment was formalized by a written Assignment of Mortgage executed by Fairbanks Capital on August 7, 2003 and recorded in the Office of the City Register of the City of New York on May 12, 2004. (PX 4)

12.     The defendant received notice of the reassignment of the Note and Mortgage by Fairbanks Capital to Countrywide in or about April 2002. (Tr.(1) at 100)

*Payment and Litigation History*

13.     In April 1999, after Fairbanks Capital became the assignee of the loan and while it was still servicing the loan, Fairbanks Capital filed a foreclosure complaint in New York Supreme Court alleging a breach of the Note and Mortgage by the defendant Gary Brown for failing to make payments. The lawsuit was dismissed upon the filing of a Stipulation of Discontinuance dated June 3, 1999. (DX 3)

14.     On June 8, 2001, Fairbanks Capital filed a second foreclosure complaint in New York Supreme Court alleging nonpayment.  Fairbanks Capital did not actively pursue the second foreclosure complaint.  The complaint was ultimately dismissed without prejudice pursuant to a Stipulation of Discontinuance dated September 24, 2003 and filed on March 10, 2004.  (DX 19)

15.     In April 2002, after learning that the loan had been reassigned to Countrywide, the defendant made a telephone call to Countrywide to address the foreclosure proceedings that Fairbanks Capital had initiated, during which he asserted that he was not in arrears in making payments on the loan.  (Tr.(1) at 99-100; PX 12) As a result of the call, Countrywide decided to take the loan out of foreclosure status in order to investigate the defendant's assertions that he was current in his loan payments. (Tr.(1) at 100-02)

16.     On November 25, 2002, having determined that the defendant had failed to make payments as required, Countrywide filed the foreclosure complaint now before the court in New York Supreme Court alleging nonpayment by the defendant. The action was removed to this court by the defendant in January 2003.

17.     Before filing the complaint, Countrywide sent a Notice of Default to Gary Brown on or about October 3, 2002.  (Tr.(1) at 102; PX 7)

18.     Gary Brown did not cure the default.  (Tr.(1) at 102-03)

19.     Records of the plaintiff introduced at trial reflect that the defendant failed to make mortgage payments when due on a number of occasions from and after May 1,

2001.  (PX 9, 10, 11)  The records reflect that the defendant made certain payments after May 1, 2001 on the following dates in 2002:  April 15, June 21, July 22, August 23, and September 24.  The payments were applied to pay down the loan but were not sufficient to cover all past due payment obligations.  (Tr.(1) at 113-14)

20.    The plaintiff prepared a summary of the information in the records produced at trial which reflects how and when the payments received from the defendant were applied to the repayment of the loan dating from October 1997 to the present.  (PX 11)  The defendant produced no evidence to show that the plaintiff's records and summary were inaccurate or that any payments he had made were not reflected in those documents.

21.    The defendant tendered various checks and money orders as partial payments of the loan which Countrywide did not negotiate and which were not applied to the loan.  (DX 22).  The payments were tendered after the plaintiff had issued its Notice of Default.

22.    Under the terms of the Note and Mortgage, the lender is under no obligation to accept less than the full amount of the loan after a default has been declared.  (PX 1, 5)

23.    On August 12, 1999, the defendant paid a premium for hazard insurance in the amount of $508 for the period from September 11, 1999 to September 11, 2000.  (DX 25, 25a; Tr.(2) at 64-65).  Fairbanks Capital paid a premium for the same period on September 13, 1999.  (PX 9)

24.    The defendant thereafter paid a premium for hazard insurance in the amount of $535 for the period from September 11, 2000 to September 11, 2001.  (DX 26; Tr.(2) at 71-74)**.**  Fairbanks Capital paid a premium for the same period.  (PX 9)

25.    The defendant paid real estate taxes to the City of New York in the amount of $815.79 on January 2, 2002.  (DX 23, 24).

26.    The Note and Mortgage provide that the borrower is responsible for the lender's costs of collection, including reasonable attorneys' fees in the event of a default.  (PX 1, 5)

## CONCLUSIONS OF LAW

1.    This court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because it is an action between citizens of different states and under 28 U.S.C. § 1346 because the United States is named as a defendant.

2.    The defendant's failure to make payments as required by the Note and Mortgage constitutes a breach of those instruments and is an event of default for which acceleration of the entire debt and foreclosure are available remedies.

3.    Once a default has been declared and the debt accelerated, the mortgage is not required to accept anything less than full repayment of the debt and may properly reject partial or full payment of arrears.  *See, e.g., United Companies Lending Corp. v. Hingos*, 283 A.D.2d 764, 766, 724 N.Y.S.2d 134, 136 (3d Dep't 2001); *First Federal Sav. Bank v. Midura*, 264 A.D.2d 407, 407-08, 694 N.Y.S.2d 121, 122 (2d Dep't 1999).

4.    The defendant's affirmative defense of payment fails for lack of proof.

5.      The defendant's allegation that the plaintiff engaged in sharp practices in connection with the loan is unsupported by the evidence.

6.      The defendant's demand for rescission under 15 U.S.C. § 1635 fails because that section does not apply to a mortgage transaction of the type before the court, *see id.* § 1635(a), and because any action for rescission under 15 U.S.C. § 1635 is barred by the statute of limitations. *See id.* § 1635(f).

7.      The defendant's counterclaim for rescission based on allegations that the plaintiff violated the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, is unsupported by the evidence and, in any event, is barred by the statute of limitations because it was asserted more than three years after the consummation of the loan transaction. *See* 15 U.S.C. § 1635(f).

8.      To the extent that the defendant has asserted a claim for other relief under the Truth in Lending Act, any such claim is barred by the statute of limitations because it was asserted more than one year after the consummation of the loan transaction. *See* 15 U.S.C. § 1640(e); *Van Pier v. Long Island Savings Bank*, 20 F. Supp. 2d 535, 536 (S.D.N.Y. 1998).

9.      The defendant's claim that the plaintiff violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*, is unsupported by any evidence.

10.     Because the Note and Mortgage was assigned by Fairbanks Capital to Countrywide as of March 29, 2002, Countrywide was a proper party to assert claims and institute foreclosure proceedings under the Note and Mortgage, notwithstanding

that the Assignment of Mortgage was not filed until after the instant proceeding was initiated. Under New York law, the failure to record an assignment of a mortgage does not render the assignment invalid, but rather renders it void only as against a person who subsequently purchases or otherwise acquires an interest in all or part of the property. *See* N.Y. Real Prop. Law § 291. Since the defendant is not a subsequent purchaser of the property, the failure to record the assignment is of no moment in determining the plaintiff's right to institute this action.

11.     The plaintiff is entitled to a judgment directing sale of the mortgaged premises to discharge the mortgage debt and to cover the expenses of the sale. The amount of the mortgage debt will be established by this court prior to the entry of any such judgment. The mortgage debt shall include the outstanding principal balance of the Note together with unpaid interest that has accrued thereon, and such other fees and costs, including reasonable attorneys' fees, as are specifically provided in the Note. Upon determination of the mortgage debt, the court will enter judgment directing sale and distribution of proceeds by the sheriff or a referee in accordance with section 1351 of the New York Real Property Actions and Proceedings Law.

12.     By separate order, the court will establish a schedule for the submission of an accounting of the mortgage debt by the plaintiff and for the submission of opposition by the defendant to any such accounting. Any such accounting shall not include a recovery by the plaintiff for any insurance premiums paid by Fairbanks Capital to purchase insurance for the period from September 11, 1999 to September 11,

2001, as the defendant made payments for insurance for that period directly to the insurer. Nor shall any such accounting include reimbursement for any real estate taxes paid for the periods from (i) January 1 to March 31, 2000; (ii) January 1, 2002 to March 31, 2002; and (iii) April 1, 2002 to June 30, 2002, as the defendant paid those taxes directly to the New York City Department of Finance.

**SO ORDERED:**

_Viktor V. Pohorelsky_

VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:      Brooklyn, New York
            August 1, 2005